UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 20-mj-56 (GMH) |
| | ) | No. 20-mj-59 (GMH) |
| AMINA WASHINGTON-BEY | ) | No. 20-mj-63 (GMH) |
| | ) | No. 20-mj-175 (GMH) |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the application of the United States that the conditions of Defendant Amina Washington-Bey's pretrial release be revoked and that he be detained pending trial. After conducting a hearing pursuant to 18 U.S.C. § 3148(b) on September 9, 2020, the government's motion was granted. This Memorandum Opinion and Order supplies written findings of fact and supplements the oral explanation for that decision.

### I.    BACKGROUND[1]

#### A.    Facts Prior to the Instant Offenses

Around November 2014, Defendant was arrested for jumping a security barrier near the White House. A year later, he was found in possession of a knife after jumping a White House Complex[2] security barrier. Throughout 2016, the Secret Service observed him around the White House multiple times; he once carried a sign threatening to blow up federal buildings. He was arrested twice in 2017 for violating a White House Complex stay-away order. In June 2018, he was again arrested for jumping a White House Complex security barrier.

---

[1] The facts contained herein are based on the government's factual proffer in its motion to revoke Defendant's conditions of release. *See generally* 20-mj-56, ECF No. 22; 20-mj-59, ECF No. 22; 20-mj-63, ECF No. 20.

[2] The White House Complex—which includes, among other things, the White House Mansion and the White House grounds—is a restricted area in Washington, D.C.

### B. Facts Regarding the Instant Offenses

On April 5, 2020, Secret Service Officer George Zaki observed Defendant walking around the area of the Ellipse, located in front of the White House. Officer Zaki saw Defendant approach a security barrier and begin to climb it, grabbing the metal fencing on top and pulling himself off the ground. Officer Zaki commanded Defendant to stop climbing the barrier and get on the ground; Defendant complied with those orders and was placed under arrest. On April 6, 2020, the government sought and obtained a complaint charging Defendant with Entering or Remaining in Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1) and with Unlawful Entry in violation of D.C. Code § 22-3302(b) (the "section 1752 case").

At Defendant's initial appearance on April 6, 2020, the government orally requested that Defendant be released with conditions. That motion was granted, and Defendant was released with the following conditions, among others: he was to maintain his mental health medication regimen as directed by Pretrial Services and stay away from the White House Complex ("the stay-away area"), and he was not to be rearrested on probable cause.

Three days later, Secret Service Officer Austin Huntington was walking in a location within the stay-away area when he observed Defendant hiding behind a pillar. After confirming that Defendant had been ordered to stay away from that area, Officer Huntington placed Defendant under arrest. On April 10, 2020, the government sought and obtained a complaint charging Defendant with contempt of court in violation of 18 U.S.C. § 401(3).

At Defendant's initial appearance in that case on April 10, 2020, the government again orally requested that Defendant be released with conditions, as defense counsel indicated that Defendant's failure to comply with the conditions of release was due to his inability to obtain his medication for reasons outside his control. That motion was granted, and Defendant was released

on the same conditions as before, including that he maintain his mental health medication regimen, stay away from the White House Complex, and not be rearrested on probable cause.

One week later, Secret Service Officer Ryan Mangum observed Defendant in a location within the stay-away area. Officer Mangum recognized Defendant and had prior knowledge of the stay-away orders. Upon questioning from Officer Mangum, Defendant acknowledged that he knew he was not supposed to be in that area. After confirming Defendant's identity and the existence of the stay-away orders, Officer Mangum placed Defendant under arrest. Thereafter, Defendant was interviewed by two other Secret Service agents. Most relevant here, he told them that he had not been compliant with his mental health medication regimen and that he had not opened the medication he had received. On April 18, 2020, the government sought and obtained another complaint charging Defendant with contempt of court in violation of 18 U.S.C. § 401(3).

At Defendant's initial appearance in that case on April 20, 2020, the government orally requested that Defendant be temporarily detained under 18 U.S.C. § 3142(d)(1)(A)(iii) due to a detainer issued by the Parole Commission for a violation of his post-conviction supervised release in a D.C. Superior Court case. The government also notified the Court that it intended to file a motion to revoke Defendant's conditions of release pursuant to 18 U.S.C. § 3148 and requested a competency evaluation. The Court granted the temporary detention and ordered a competency evaluation. On April 28, 2020, the government filed a motion to revoke Defendant's conditions of release.

On May 15, 2020, the Court held a joint competency hearing and hearing on the conditions of release. At that hearing, the Court found Defendant competent, denied the government's motion

to revoke Defendant's conditions of release, and ordered that Defendant be released subject to the same conditions as before.[3]

On September 5, 2020, Secret Service Sergeant Andrew Ward observed Defendant in front of the Willard Hotel, a location within the stay-away area. Sergeant Ward had prior knowledge of Defendant and of the stay-away orders, and he began speaking with Defendant. Secret Service Officer Jabari Gilliam then arrived at the scene. Officer Gilliam saw Defendant give Sergeant Ward an identification card, and he heard Defendant say that he "did not have any weapons but had mace for protection." The officers found Defendant to be in possession of pepper spray. After confirming Defendant's identity and the existence of the stay-away orders, Officer Gilliam placed Defendant under arrest for contempt.

Upon subsequent questioning with other members of the Secret Service, Defendant stated that he is currently homeless and was out on a walk when he was stopped by Sergeant Ward. He also stated that he was unaware there were active stay-away orders and that he did not realize he was prohibited from being in that area. When asked about his mental health history, he claimed that it been approximately 2 to 3 weeks since he had last visited the Comprehensive Psychiatric Emergency Program and approximately 1 to 2 weeks since he had last visited his mental health outpatient program. He further noted that he had last taken his prescribed medications approximately 2 or 3 days prior to September 5; he was unable to recall the names of his prescriptions.

On September 5, 2020, the government sought and obtained a third complaint charging Defendant with contempt of court in violation of 18 U.S.C. § 401(3). Furthermore, in light of his

---

[3] Although Defendant was released for purposes of his federal court cases, he continued to be detained until June 5, 2020, due to the Parole Commission's detainer.

September 5 arrest, on September 7, 2020, the government again moved to revoke Defendant's conditions of release in his section 1752 case and in his two other contempt cases.

On September 9, 2020, the undersigned held a joint initial appearance for Defendant's September 5 arrest and a status hearing on his section 1752 case and on his two other contempt cases. At the conclusion of that joint initial appearance and status hearing, the undersigned granted the government's motion to revoke Defendant's conditions of release and ordered that he be held without bond pending trial.

## II.   LEGAL STANDARD

"The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, permits the revocation of release and an order of detention for a person who has been released under 18 U.S.C. § 3142 and has violated a condition of that release." *United States v. Koumbairia*, No. 07-cr-0061 (JDB), 2007 WL 1307909, at *2 (D.D.C. May 3, 2007) (quoting *United States v. Addison*, 984 F. Supp. 1, 2 (D.D.C. 1997)). The Court "shall enter an order of revocation and detention" if, after a hearing, it

> (1) finds that there is—
>
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
> (A) based on the factors set forth in [18 U.S.C.] 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b). At issue here is whether there is clear and convincing evidence that Defendant violated a condition of his release and, if so, whether he would be unlikely to abide by

5

any condition or combination of conditions in the future.  *See* 20-mj-56, ECF No. 22 at 9; 20-mj-59, ECF No. 22 at 9; 20-mj-63, ECF No. 20 at 9.

### III.   DISCUSSION

To begin, there is clear and convincing evidence that Defendant violated the conditions of his release on September 5, 2020.  Specifically, two members of the Secret Service—Sergeant Ward and Officer Gilliam—observed and spoke with Defendant while he was standing in front of the Willard Hotel, a location that is near the White House and is undisputedly within the stay-away area as described in the release orders in Defendant's section 1752 case and in his two other contempt cases.  Sergeant Ward confirmed Defendant's identity by checking his identification card, and Officer Gilliam confirmed the existence of the active stay-away orders prohibiting Defendant from being in that area.

Next, it is unlikely that Defendant would abide by any condition or combination of conditions of release.  Prior to allegedly committing the underlying offense in his section 1752 case, Defendant was arrested multiple times for attempting to enter the White House Complex, and he repeatedly violated an order that he stay away from that area.  Since then, Defendant has, on three occasions, violated the conditions of his release, despite being given three opportunities by the Court to comply with those conditions.  That Defendant does not appear to be adhering to his mental health medication regimen, as ordered by the Court, increases the possibility that he would violate any conditions of release in the future.  Additionally, the undersigned is troubled by the fact that Defendant has, on at least two occasions, been in or near the White House Complex while possessing weapons—namely, in November 2015, he was found to be in possession of a knife after jumping a White House Complex security barrier, and during his September 5, 2020, arrest, he was in possession of pepper spray.  Possessing weapons in or near restricted areas—

especially while attempting to enter restricted areas unlawfully—greatly increases the risk of harm to Defendant, to members of the Secret Service, and to others in the immediate area. Thus, the undersigned has no confidence that Defendant would be likely to abide by any condition or combination of conditions of release.

## IV.    CONCLUSION

Based on consideration of all the evidence, the standards set forth in section 3141(b) of the Bail Reform Act, and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that Defendant violated the conditions of his release, and also finds that Defendant would be unlikely to abide by any condition or combination of conditions of release in the future. Accordingly, it is hereby

**ORDERED** that the government's motion to revoke Defendant's conditions of release in Case Nos. 20-mj-56, 20-mj-59, and 20-mj-63, is **GRANTED**; it is further

**ORDERED** that Defendant be held without bond pending trial in Case No. 20-mj-175; it is further

**ORDERED** that Defendant be remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED**.

Date:  September 11, 2020

                                                                    G. MICHAEL HARVEY
                                                                    UNITED STATES MAGISTRATE JUDGE